2017 IL App (4th) 150342

NOS. 4-15-0342, 4-15-0344, 4-15-0345, 4-15-0348, 4-15-0351, 4-15-0353, 4-15-0354,
4-15-0355, 4-15-0356, 4-15-0357, 4-15-0358, 4-15-0359, 4-15-0361,
4-15-0363, 4-15-0364, 4-15-0366, 4-15-0368, 4-15-0369 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 6, 2017
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| ENBRIDGE PIPELINE (ILLINOIS), LLC, n/k/a Illinois Extension Pipeline Company, LLC, Plaintiff-Appellee, v. (No. 4-15-0342) LARRY KIEFER, ALL OTHER FARM OWNERS, NONRECORD CLAIMANTS, and UNKNOWN OWNERS, Defendants-Appellants. | ) ) ) ) ) ) ) ) ) ) | Appeal from Circuit Court of McLean County No. 14ED2 |
| ENBRIDGE PIPELINE (ILLINOIS), LLC, n/k/a Illinois Extension Pipeline Company, LLC, Plaintiff-Appellee, v. (No. 4-15-0344) JAMES ONDECK, NONRECORD CLAIMANTS, and UNKNOWN OWNERS, Defendants-Appellants. | ) ) ) ) ) ) ) ) | No. 14ED3 |
| ENBRIDGE PIPELINE (ILLINOIS), LLC, n/k/a Illinois Extension Pipeline Company, LLC, Plaintiff-Appellee, v. (No. 4-15-0345) BARBARA KIEFER, NONRECORD CLAIMANTS, and UNKNOWN OWNERS, Defendants-Appellants. | ) ) ) ) ) ) ) ) | No. 14ED4 |
| ENBRIDGE PIPELINE (ILLINOIS), LLC, n/k/a Illinois Extension Pipeline Company, LLC, Plaintiff-Appellee, v. (No. 4-15-0348) DUANE GUTH, Now Succeeded by Alice J. Guth, as Trustee of the Guth Family Trust; NONRECORD CLAIMANTS; and UNKNOWN OWNERS, Defendants-Appellants. | ) ) ) ) ) ) ) ) ) ) ) | No. 14ED6 |

ENBRIDGE PIPELINE (ILLINOIS), LLC, ) No. 14ED10
n/k/a Illinois Extension Pipeline Company, LLC, )
        Plaintiff-Appellee, )
        v.        (No. 4-15-0351) )
LAND TRUST NO. 163, Dated February 16, 2006; )
DOUGLAS NELSON; BEVERLY NELSON; )
NONRECORD CLAIMANTS; and UNKNOWN )
OWNERS, )
        Defendants-Appellants. )
_____ )

ENBRIDGE PIPELINE (ILLINOIS), LLC, ) No. 14ED11
n/k/a Illinois Extension Pipeline Company, LLC, )
        Plaintiff-Appellee, )
        v.        (No. 4-15-0353) )
FREED AGRICULTURAL SERVICE, INC.; )
NONRECORD CLAIMANTS; and UNKNOWN )
OWNERS, )
        Defendants-Appellants. )
_____ )

ENBRIDGE PIPELINE (ILLINOIS), LLC, ) No. 14ED13
n/k/a Illinois Extension Pipeline Company, LLC, )
        Plaintiff-Appellee, )
        v.        (No. 4-15-0354) )
BLAKE LEARNED and DIANE YOUNT, as Co- )
executors of the Estates of Wendell Learned and )
Louise Learned; NONRECORD CLAIMANTS; and )
UNKNOWN OWNERS, )
        Defendants-Appellants. )
_____ )

ENBRIDGE PIPELINE (ILLINOIS), LLC, ) No. 14ED14
n/k/a Illinois Extension Pipeline Company, LLC, )
        Plaintiff-Appellee, )
        v.        (No. 4-15-0355) )
OSWEGO COMMUNITY BANK, as Trustee Under )
the Provisions of a Certain Trust Agreement, Dated )
December 17, 1999, known as the Trust Number 187; )
WILLIAM HACKER; LORRAINE HACKER; )
NONRECORD CLAIMANTS; and UNKNOWN )
OWNERS, )
        Defendants-Appellants. )
)
)
)
)
)
)

ENBRIDGE PIPELINE (ILLINOIS), LLC, ) No. 14ED15
n/k/a Illinois Extension Pipeline Company, LLC, )
        Plaintiff-Appellee, )
        v.         (No. 4-15-0356) )
HINTHORN FAMILY LTD PARTNERSHIP, )
NONRECORD CLAIMANTS, and UNKNOWN )
OWNERS, )
        Defendants-Appellants. )
_____ )
ENBRIDGE PIPELINE (ILLINOIS), LLC, ) No. 14ED16
n/k/a Illinois Extension Pipeline Company, LLC, )
        Plaintiff-Appellee, )
        v.         (No. 4-15-0357) )
AMB HOLDINGS LLC, NONRECORD )
CLAIMANTS, and UNKNOWN OWNERS, )
        Defendants-Appellants. )
_____ )
ENBRIDGE PIPELINE (ILLINOIS), LLC, ) No. 14ED18
n/k/a Illinois Extension Pipeline Company, LLC, )
        Plaintiff-Appellee, )
        v.         (No. 4-15-0358) )
CRAIG ARMSTRONG, as Successor Trustee to Nina )
S. Armstrong Under the Provisions of a Trust )
Agreement dated December 17, 1999, and Known as )
The Nina S. Armstrong Trust; NONRECORD )
CLAIMANTS; and UNKNOWN OWNERS, )
        Defendants-Appellants. )
_____ )
ENBRIDGE PIPELINE (ILLINOIS), LLC, ) No. 14ED20
n/k/a Illinois Extension Pipeline Company, LLC, )
        Plaintiff-Appellee, )
        v.         (No. 4-15-0359) )
CAROL K. HOLSTINE, NONRECORD )
CLAIMANTS, and UNKNOWN OWNERS, )
        Defendants-Appellants. )
_____ )
ENBRIDGE PIPELINE (ILLINOIS), LLC, ) No. 14ED30
n/k/a Illinois Extension Pipeline Company, LLC, )
        Plaintiff-Appellee, )
        v.         (No. 4-15-0361) )
JEAN SNYDER, Trustee of the Jean Snyder )
Revocable Trust Dated December 6, 2006; )
NONRECORD CLAIMANTS; and UNKNOWN )
OWNERS, )
        Defendants-Appellants. )
)

- 3 -

| | | |
|---|---|---|
| ENBRIDGE PIPELINE (ILLINOIS), LLC, n/k/a Illinois Extension Pipeline Company, LLC, | ) ) | No. 14ED32 |
| Plaintiff-Appellee, | ) | |
| v. (No. 4-15-0363) | ) | |
| MARK S. HINES and JANA HINES, NONRECORD CLAIMANTS, and UNKNOWN OWNERS, | ) ) | |
| Defendants-Appellants. | ) | |
| _____ | ) | |
| ENBRIDGE PIPELINE (ILLINOIS), LLC, n/k/a Illinois Extension Pipeline Company, LLC, | ) ) | No. 14ED34 |
| Plaintiff-Appellee, | ) | |
| v. (No. 4-15-0364) | ) | |
| FRANK ROOP; HEIDI ROOP; WILLIAM ROOP, JR.; BETTY LIVINGSTON; LISA JONES; NONRECORD CLAIMANTS; and UNKNOWN OWNERS, | ) ) ) ) | |
| Defendants-Appellants. | ) | |
| _____ | ) | |
| ENBRIDGE PIPELINE (ILLINOIS), LLC, n/k/a Illinois Extension Pipeline Company, LLC, | ) ) | No. 14ED35 |
| Plaintiff-Appellee, | ) | |
| v. (No. 4-15-0366) | ) | |
| DANIEL F. LAY, NONRECORD CLAIMANTS, and UNKNOWN OWNERS, | ) ) | |
| Defendants-Appellants. | ) | |
| _____ | ) | |
| ENBRIDGE PIPELINE (ILLINOIS), LLC, n/k/a Illinois Extension Pipeline Company, LLC, | ) ) | No. 14ED50 |
| Plaintiff-Appellee, | ) | |
| v. (No. 4-15-0368) | ) | |
| MARK IRVING ANDREWS, Trustee of the Virgil L. Andrews Trust Dated May 3, 1995; NONRECORD CLAIMANTS; and UNKNOWN OWNERS, | ) ) ) | |
| Defendants-Appellants. | ) | |
| _____ | ) | |
| ENBRIDGE PIPELINE (ILLINOIS), LLC, n/k/a Illinois Extension Pipeline Company, LLC, | ) ) | No. 14ED51 |
| Plaintiff-Appellee, | ) | |
| v. (No. 4-15-0369) | ) | |
| TIMOTHY C. KRAFT, NONRECORD CLAIMANTS, and UNKNOWN OWNERS, | ) ) | Honorable |
| Defendants-Appellants. | ) ) | Paul G. Lawrence, Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Holder White and Pope concurred in the judgment and opinion.

**OPINION**

¶ 1 In April 2014, the Illinois Commerce Commission (Commission) granted plaintiff, Enbridge Pipeline (Illinois), LLC, now known as the Illinois Extension Pipeline Company, LLC (IEPC), eminent-domain authority to acquire easements over certain real estate for the planned construction of an approximately 170-mile liquid petroleum (oil) pipeline known as the Southern Access Extension (SAX project).

¶ 2 During the months of June and July 2014, IEPC filed separate "complaints for condemnation of permanent and temporary easements for common-carrier pipeline" (condemnation complaints) against the following defendants: (1) Larry Kiefer (McLean County case No. 14-ED-2 and this court's case No. 4-15-0342); (2) James Ondeck (McLean County case No. 14-ED-3 and this court's case No. 4-15-0344); (3) Barbara Kiefer (McLean County case No. 14-ED-4 and this court's case No. 4-15-0345); (4) Duane Guth (McLean County case No. 14-ED-6 and this court's case No. 4-15-0348); (5) Land Trust No. 163, Douglas Nelson, and Beverly Nelson (McLean County case No. 14-ED-10 and this court's case No. 4-15-0351); (6) Freed Agricultural Service, Inc. (McLean County case No. 14-ED-11 and this court's case No. 4-15-0353); (7) Blake Learned and Diane Yount (McLean County case No. 14-ED-13 and this court's case No. 4-15-0354); (8) Oswego Community Bank, William Hacker, and Lorraine Hacker (McLean County case No. 14-ED-14 and this court's case No. 4-15-0355); (9) Hinthorn Family Limited Partnership (McLean County case No. 14-ED-15 and this court's case No. 4-15-0356); (10) AMB Holdings, LLC (McLean County case No. 14-ED-16 and this court's case No. 4-15-0357); (11) Craig Armstrong (McLean County case No. 14-ED-18 and this court's case No. 4-15-0358); (12) Carol K. Holstine (McLean County case No. 14-ED-20 and this court's case

No. 4-15-0359); (13) Jean Snyder (McLean County case No. 14-ED-30 and this court's case No. 4-15-0361); (14) Mark S. Hines and Jana Hines (McLean County case No. 14-ED-32 and this court's case No. 4-15-0363); (15) Frank Roop, Heidi Roop, William Roop, Jr., Betty Livingston, and Lisa Jones (McLean County case No. 14-ED-34 and this court's case No. 4-15-0364); (16) Daniel F. Lay (McLean County case No. 14-ED-35 and this court's case No. 4-15-0366); (17) Mark Irving Andrews (McLean County case No. 14-ED-50 and this court's case No. 4-15-0368); and (18) Timothy C. Kraft (McLean County case No. 14-ED-51 and this court's case No. 4-15-0369) (collectively, landowners). IEPC's condemnation complaints sought to obtain right-of-way and easement interests in landowners' respective properties and determine just compensation for its interests.

¶ 3        In February 2015, IEPC filed a motion for summary judgment under section 2-1005 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2-1005 (West 2014)), arguing that no genuine issue of material fact existed regarding the just compensation IEPC should pay to landowners for its right-of-way and easement interests. After landowners responded to IEPC's summary judgment motion, IEPC essentially contended that because (1) landowners had failed to file counteraffidavits opposing IEPC's motion for summary judgment as required by Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013) and (2) IEPC properly complied with Rule 191(a) by filing affidavits in support of its motion, IEPC was entitled to judgment as a matter of law on the issue of just compensation. Following a March 2015 hearing, the trial court granted IEPC's summary judgment motion and awarded landowners just compensation totaling $332,000.

¶ 4        Landowners appeal, raising numerous claims that challenge the trial court's grant of summary judgment in IEPC's favor. We affirm.

¶ 5                                    I. BACKGROUND

¶ 6                                    A. Procedural History

¶ 7           In *Enbridge Energy (Illinois), L.L.C. v. Kuerth*, 2016 IL App (4th) 150519, ¶¶ 6-23, 69 N.E.3d 287, and *Enbridge Pipeline (Illinois), LLC v. Hoke*, 2017 IL App (4th) 150544, ¶¶ 6-23, this court chronicled the extensive procedural history regarding IEPC's intent to (1) construct, operate, and maintain the SAX project under section 15-401 of the Common Carrier by Pipeline Law (Pipeline Law) (220 ILCS 5/15-401 (West 2006)) and (2) acquire, when necessary, private property under eminent-domain authority to install the SAX project as permitted by section 8-509 of the Public Utilities Act (220 ILCS 5/8-509 (West 2006)). Because the issues presented in the instant case do not require a comprehensive historical review to place landowners' appeals in context, we provide the following brief synopsis.

¶ 8           In July 2009, the Commission granted IEPC a certificate in good standing, which authorized construction of the SAX project. The Commission, however, denied IEPC's request for eminent-domain authority, urging, instead, that IEPC continue negotiations with recalcitrant landowners who had declined IEPC's compensation offers. The Commission advised IEPC that it could renew its request for eminent-domain authority by demonstrating that it had made reasonable attempts to obtain easements from landowners through good-faith negotiations. Some affected landowners (intervenors) appealed the Commission's grant of a certificate in good standing, and this court affirmed. *Pliura Intervenors v. Illinois Commerce Comm'n*, 405 Ill. App. 3d 199, 200, 942 N.E.2d 576, 578 (2010).

¶ 9           In July 2013, IEPC renewed its request for eminent-domain authority, seeking to condemn specific tracts of land traversed by the planned SAX project route because the owners of those respective properties had either (1) refused to negotiate with IEPC or (2) declined IEPC's compensation offers despite extensive negotiations. Following a December 2013

administrative hearing, an administrative law judge (ALJ) recommended that the Commission grant IEPC eminent-domain authority. The Commission later accepted the ALJ's recommendation. Intervenors affected by the Commission's grant of eminent-domain authority appealed, and this court affirmed. *Pliura Intervenors v. Illinois Commerce Comm'n*, 2015 IL App (4th) 140592-U.

¶ 10        In May 2014, IEPC filed a "Motion to Reopen and Amend Order Concerning Diameter of the [SAX project]," requesting an amendment to the July 2009 certificate in good standing the Commission had issued. Specifically, IEPC sought to reduce the diameter of the SAX project from 36 to 24 inches. In December 2014, the ALJ recommended that the Commission grant IEPC's amendment, subject to certain conditions. The Commission later determined that public convenience and necessity required issuance of an amended certificate to authorize a 24-inch pipeline. Intervenors appealed, and this court affirmed the Commission's order. *Pliura Intervenors v. Illinois Commerce Comm'n*, 2016 IL App (4th) 150084-U.

¶ 11                    B. The Pertinent Events and the Parties' Filings Preceding
                                    IEPC'S Motion for Summary Judgment

¶ 12        Beginning in May 2014, IEPC made final offers to each landowner in exchange for a permanent easement and a separate temporary work-space area to be used during construction of the SAX project. In total, IEPC sought (1) permanent easements traversing approximately 55.17 acres of landowners' parcels and (2) temporary easements traversing approximately 66.04 acres landowners' parcels. In exchange for its aggregate land interests, IEPC offered landowners total compensation of approximately $1,347,813.

¶ 13        During June and July 2014—after landowners had either rejected or did not respond to IEPC's final offers—IEPC filed separate condemnation complaints, seeking to obtain right-of-way and easement interests in landowners' respective properties and to determine just

- 8 -

compensation for both interests. (Per the parties' August 2014 agreement the trial court consolidated landowners' cases.)

¶ 14 In October 2014, landowners disclosed their controlled expert witnesses: (1) Dale Aupperle, a licensed real estate broker; (2) Jeremy Crouch, a licensed real estate appraiser; and (3) Royce Don Deaver, a registered professional mechanical engineer. See Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2007) (defining a controlled expert witness as a "party's retained expert" and outlining the mandatory disclosure requirements that the party calling the expert must satisfy).

¶ 15 In December 2014, landowners filed a counterclaim, seeking compensation for the damage to the remainder of their respective parcels caused by the impending installation of the SAX project. That month, landowners also filed "The McLean County SAX Pipeline Farm Valuation Report," written by Aupperle and Crouch. The substance of that report provided opinions as to the fair-market value of IEPC's interests in landowners' respective properties. The report divided the valuation into the following three categories: (1) permanent easements, (2) temporary easements, and (3) damages to the remainder of the respective properties following the installation of the SAX project. Despite mentioning that the report was a "collaborative effort" between Aupperle and Crouch, the report confirmed that the valuation opinions and conclusions expressed therein were made solely by Aupperle. (Hereinafter, we refer to the McLean County SAX pipeline farm valuation report as the "Aupperle report" and attribute the valuation opinions and conclusions contained therein to Aupperle.)

¶ 16 In February 2015, landowners filed a report written by Deaver in which he provided expert opinions regarding the risks landowners would assume after installation of the SAX project. Deaver noted such risks included (1) the consequences that arise after an oil spill, (2) the potential for an oil company to prioritize profits over public safety, (3) the lack of

effective deterrents for an oil company's safety violations, and (4) a landowner's inability to protect their interests by, for instance, obtaining insurance against such risks. (Deaver's report is not at issue in this appeal because neither party relied on that report during the March 2015 hearing on IEPC's motion for summary judgment.)

¶ 17    In March 2015, landowners entered into a settlement agreement with IEPC in which they granted IEPC early access to their respective properties. The pertinent provisions of that agreement are as follows:

"2. In exchange for a payment to [landowners] in the amount(s) contained in Exhibit 1 ***, *** IEPC shall have access to the Subject Property for the purpose of constructing, maintaining, and operating the SAX [project] immediately after the execution of this Agreement and payment of consideration described herein;

* * *

6. The consideration paid pursuant to this Agreement shall be credited and shall be a set-off to any jury award for just compensation and/or damages in the pending condemnation cases ***, except the amount identified as crop loss;

***

8. Nothing herein shall impair the right of [landowners] to appeal any decision relating to just compensation ***; however, each [of the landowners] waives [his or her] right to raise any issue that could have been presented in a Traverse and Motion to Dismiss, including a waiver of any challenge to IEPC's right to construct, operate, and maintain the SAX [project] and to exercise eminent domain authority[.]"

¶ 18        " 'A traverse and motion to dismiss challenge plaintiff's right to condemn defendants' property.' " *Enbridge Energy (Illinois), L.L.C. v. Kuerth*, 2016 IL App (4th) 150519, ¶ 51, 69 N.E.3d 287 (quoting *Lake County Forest Preserve District v. First National Bank of Waukegan*, 154 Ill. App. 3d 45, 51, 506 N.E.2d 424, 428 (1987)). The total compensation IEPC paid to landowners in exchange for the early access was $2,174,916.

¶ 19                          C. The Issue on Appeal

¶ 20                       1. *IEPC's Motion for Summary Judgment*

¶ 21        In February 2015, IEPC filed a motion for summary judgment on the issues of just compensation and damages to the remainder. Appended to IEPC's summary judgment motion were the following three documents.

¶ 22        IEPC appended a "Real Estate Appraisal Project Summary" report by Edward J. Batis, an Illinois certified general real estate appraiser, in which Batis summarized the "essential components of the appraisal process" applicable to each of the individual properties he appraised. Batis included 18 supplemental reports detailing the just compensation and remainder damage valuations he computed for each landowners' respective properties. Also included was a February 2015 affidavit in which Batis affirmed that his appraisals complied with the Uniform Standards of Professional Appraisal Practice (USPAP) and the Code of Professional Ethics of the Appraisal Institute. Batis also affirmed that he had personal knowledge of the land valuation appraisals and, if required, he would testify competently to the content of his summary and supplemental reports.

¶ 23        IEPC also attached a "Real Estate Appraisal Report Project Summary" by W. Bradley Park, an Illinois certified general real estate appraiser, in which Park provided his opinions regarding the appropriate just compensation for the 18 parcels at issue. Park appended

separate supplemental report summaries, which provided detailed descriptions of landowners' properties, a highest and best use analysis, and an examination of the "impact of the taking on the market values of the remainder properties." Park added that his intent was to "provide sufficient detail and information to understand the opinions set forth in each of the separate reports." Park signed a February 2015 affidavit, affirming that his appraisals complied with the USPAP and the Code of Professional Ethics of the Appraisal Institute. Park also affirmed that he had personal knowledge of the aforementioned reports and, if required, he would testify competently to the content contained therein.

¶ 24        IEPC also appended to its summary judgment motion the Aupperle report. In its memorandum in support of its summary judgment motion, IEPC challenged the admissibility of the Aupperle report by characterizing it as "nothing short of an outrageous set of unqualified, baseless, purely speculative, and highly prejudicial statements that fail to meet any standard for admissibility under Illinois law."

¶ 25              2. *Landowners' Response to IEPC's Summary Judgment Motion*
                     *and IEPC's Reply*

¶ 26        On March 25, 2015, landowners filed a response to IEPC's motion for summary judgment. Landowners argued generally that (1) the valuation opinions in the Aupperle report were credible and admissible and (2) the USPAP standard had not been adopted by Illinois. The sole attachment to landowners' response was an October 2014 article from Illinois Realtor Magazine (Elizabeth A. Urbance, *BPOs and CMAs to Become Licensed Activities Under the Illinois Real Estate License Act of 2000*, Illinois Realtor, Oct. 2014, at 22, http://www.illinoisrealtor.org/node/3662 (last visited May 25, 2017) ("BPO" is an acronym for "broker price opinions," and "CMA" is an acronym for "comparative market analyses")). Landowners did not file any counteraffidavits with their response.

¶ 27          Later that month, landowners filed a "Supplement of Facts Supporting [Landowners'] Response to [IEPC's] Motion for Summary Judgment." Landowners' filing—which was not signed or sworn—contained 173 pages of information segregated as follows: (1) an excerpt taken from IEPC's website listing "reportable spills" for 2010; (2) Marathon Petroleum Company's ownership, shipping commitment, and proposed use of the SAX project; (3) IEPC's original request for a certificate in good standing; (4) IEPC's established route for the SAX project; (5) excerpts from a McLean County zoning ordinance; (6) two September 2009 letters from IEPC, conveying offers to specific landowners; (7) Deaver's curriculum vitae; (8) a printout purporting to show that Aupperle is a licensed real estate broker; and (9) various maps showing different IEPC pipeline routes.

¶ 28          Shortly thereafter, IEPC filed a reply to landowners' response, renewing its assertions that it was entitled to judgment as a matter of law. Specifically, IEPC noted that in their response, landowners "proffer no affidavits, no reports, no exhibits, and no judicial analyses to the court." IEPC's reply also noted that in condemnation proceedings involving landowners from De Witt County, the trial court there had barred Aupperle's valuation opinions.

¶ 29          3. *The Hearing on IEPC's Motion for Summary Judgment*

¶ 30          At the March 2015 hearing on IEPC's motion for summary judgment, the parties' arguments focused on the admissibility of the Aupperle report. IEPC characterized the Aupperle report as fatally flawed. Landowners challenged (1) the applicability of the case law IEPC relied upon, (2) the claims IEPC raised concerning the credibility of the Aupperle report, and (3) the threshold for admission of valuation testimony, which landowners claimed was "very low." During IEPC's rebuttal argument, the following exchange occurred:

          "THE COURT: What did the judge down in De[ ]Witt [County] do? He

- 13 -

excluded Aupperle's opinion[?] [The court] remember[s] you mentioned it last time, but [the court does not]—

[IEPC'S COUNSEL]: I think we provided the Court with the order form, from De Witt County. Yes, *** Aupperle has been barred, and *** Crouch has been barred, and *** Deaver, who was mentioned here but not mentioned in the Aupperle report, was also barred.

THE COURT: For similar reasons that you raised?

[IEPC'S COUNSEL]: For, I believe, exactly the reasons that we have raised here.

THE COURT: But that was not a motion for summary judgment? That was just a bar?

[IEPC'S COUNSEL]: That was a motion *in limine* to bar.

THE COURT: Is there *** other evidence in that case[;] other appraisals that haven't gotten to that issue yet?

[IEPC'S COUNSEL]: There are in those pending cases where Aupperle, Crouch, and Deaver were barred, the only remaining evidence is the evidence of [IEPC's] appraisers.

THE COURT: *** All right."

¶ 31    Thereafter, the trial court ruled as follows:

"[T]he court [will] exclude [Aupperle's] entire opinion that was filed here with the Court in similar fashion as was done in De[ ]Witt County, and because of the fact that the Court would then be excluding the opinion evidence of *** Aupperle, that does mean [landowners] wouldn't have any admissible value testimony at

- 14 -

this point in time to value the permanent [and] temporary easements and any remainder damage, and so therefore, the only opinions that are available then would be the opinions filed by [IEPC], and so there would be no issue of material fact, and the Court would therefore grant the motion for summary judgment."

In its later written order, the court awarded landowners compensation totaling $332,000.

¶ 32     This appeal followed.

¶ 33                                    II. ANALYSIS

¶ 34               A. Summary Judgment and This Court's Standard of Review

¶ 35     "The purpose of a summary-judgment proceeding is not to try an issue of fact but, instead, to determine whether a genuine issue of material fact exists." *Evans v. Brown*, 399 Ill. App. 3d 238, 243, 925 N.E.2d 1265, 1270 (2010). "Summary judgment is properly granted when the pleadings, depositions, admissions, and affidavits on file, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 34. "In order to survive a motion for summary judgment, a [respondent] need not prove her case, but she must present a factual basis that would arguably entitle her to a judgment." *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12, 21 N.E.3d 684. We review *de novo* a trial court's ruling on a summary-judgment motion. *Bartonville*, 2017 IL 120643, ¶ 34.

¶ 36                              B. The Purpose of Rule 191(a) in a
                                     Summary Judgment Proceeding

¶ 37     The sole overarching issue throughout this litigation concerns IEPC's intent to acquire right-of-way and easement interests over certain real estate for the planned construction of the SAX project. To achieve that objective, IEPC attempted to negotiate with holdout landowners regarding the fair-market value of its interest in their respective properties. As

previously noted, in June 2014—after settlement negotiations with landowners failed—IEPC executed the eminent-domain authorization the Commission granted by filing condemnation complaints, which sought a jury's determination as to the just compensation for its interests in landowners' parcels. Although landowners filed a counterclaim on the issue of damages to the remainder of their respective properties following installation of the SAX project, that damage claim was merely a subcategory of the just compensation that a jury had yet to determine.

¶ 38    Thus, when IEPC filed its condemnation complaints in June 2014, the only issue to be decided concerned the fair-market value of IEPC interests in landowners' properties—that is, the just compensation that IEPC owed to landowners for its interest in their respective parcels. Indeed, the primary goal, in a partial condemnation—such as this one—"is to provide compensation that is 'just' in the sense that it places the landowner in the same economic position after the condemnation as before." *City of Springfield v. West Koke Mill Development Corp.*, 312 Ill. App. 3d 900, 904, 728 N.E.2d 781, 785 (2000). "Given the technical and particularized process employed to calculate the just compensation that a condemnor should provide for its interest in a condemnee's property, a condemnation proceeding essentially becomes a contest on the credibility of the parties' experts." *Hoke*, 2017 IL App (4th) 150544, ¶ 108.

¶ 39    By filing its February 2015 motion for summary judgment on the issues of just compensation and damages to the remainder, however, IEPC requested that the trial court circumvent the usual fact-finding a jury performs, claiming that because no genuine issue of material fact existed, IEPC was entitled to judgment as a matter of law. In support of its summary judgment motion, IEPC appended affidavits filed by its expert appraisers, Batis and Park. In its later reply to landowners' response, IEPC also noted that landowners failed to file

any counteraffidavits.

¶ 40 When a party offers expert opinions in written form at the summary judgment stage, the writings in support or in opposition to the motion, such as affidavits, must not only be sworn but must also comply with Rule 191(a), which provides, in part, the following guidance:

"Affidavits in support of and in opposition to a motion for summary judgment under section 2-1005 of the Code of Civil Procedure *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013).

¶ 41 In *Robidoux v. Oliphant*, 201 Ill. 2d 324, 775 N.E.2d 987 (2002), the seminal case interpreting the scope of Rule 191(a), the supreme court provided two main points applicable to the instant case. The first point is that because an affidavit "serves as a substitute" for trial testimony, "it is necessary that there be strict compliance with Rule 191(a) 'to insure that trial judges are presented with valid evidentiary facts upon which to base a decision.' " *Id.* at 335-36, 775 N.E.2d at 994 (quoting *Solon v. Godbole*, 163 Ill. App. 3d 845, 851, 516 N.E.2d 1045, 1049 (1987)). The second point is that the affidavit filed in support of a motion for summary judgment must have attached thereto sworn or certified copies of all papers upon which the affiant relied. *Id.* at 343-44, 775 N.E.2d at 998. Because this second requirement "is inextricably linked to the provisions requiring specific factual support in the affidavit itself," "[i]t is not a mere technical requirement." *Id.* at 344, 775 N.E.2d at 998.

¶ 42        In *Essig v. Advocate BroMenn Medical Center*, 2015 IL App (4th) 140546, ¶ 46, 33 N.E.3d 288, this court summarized the rationale underpinning the supreme court's guidance in *Robidoux* as follows:

> "At trial, an expert may give an opinion without first disclosing the facts underlying that opinion [citation] because the opposing party has the opportunity to cross-examine the expert as to the basis of his opinion. [Citation.] However, because the opportunity to cross-examine is not present when a party submits written opinions in the summary judgment context, Rule 191(a) essentially requires the affiant to provide his own cross-examination regarding the factual bases for his opinions."

¶ 43        "Given that cross-examination is unavailable as a means to test an affidavit, it is not surprising that the standard for admission of an affidavit in a summary judgment context would be higher than for the admission of an expert's opinion at trial." *Robidoux*, 201 Ill. 2d at 338, 775 N.E.2d at 995. Thus, "[a]n affidavit satisfies the requirements of Rule 191(a) if from the document as a whole it appears the affidavit is based on the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents." (Internal quotation marks omitted.) *Madden v. F.H. Paschen/S.N. Nielson, Inc.*, 395 Ill. App. 3d 362, 386, 916 N.E.2d 1203, 1223-23 (2009). "[A]n expert's affidavit in support of or in opposition to a motion for summary judgment *must* adhere to the requirements set forth in the plain language of Rule 191(a)." (Emphasis added.) *Robidoux*, 201 Ill. 2d at 339, 775 N.E.2d at 995.

¶ 44        It is from this well-established foundation that we address landowners' claim that the trial court erred by granting summary judgment in IEPC's favor.

¶ 45          C. The Trial Court's Grant of Summary Judgment

¶ 46          In its February 2015 motion for summary judgment, IEPC included separate affidavits from its two experts, Batis and Park, who were experienced certified general real estate appraisers. In their respective affidavits, Batis and Park explained that they had performed an appraisal of the 18 parcels at issue that complied with the USPAP and Code of Professional Ethics of the Appraisal Institute. Attached as an exhibit to their affidavits was a detailed report listing the components of the appraisal process common to all of landowners' parcels. Each expert then prepared 18 supplemental reports that identified appraisal components tailored to the unique characteristics of each property. Thereafter, Batis and Park estimated the fair-market value for the permanent easement, temporary easement, and damage to the remainder to arrive at a just compensation calculation for each parcel. Batis and Park averred in their affidavits that they were competent to testify to any aspect of the appraisal process as documented in their general and supplemental reports. For reasons we later explain, IEPC's inclusion of the Aupperle report in its motion for summary judgment was neither necessary nor prudent.

¶ 47          In their March 2015 response, landowners argued generally that (1) the valuation opinions in the Aupperle report were credible and, thus, admissible and (2) the USPAP standard had not been adopted by Illinois. The sole attachment to landowners' response was the aforementioned October 2014 article written by Urbance. Landowners did not include the Aupperle report or any counteraffidavits with their response. Landowners later supplemented their response with 173 pages of information, as earlier noted, but did not include any counteraffidavits.

¶ 48          This comprises the "evidence" that was before the trial court on the issue of just compensation and damages to the remainder at the March 2015 hearing on IEPC's motion for

summary judgment.

¶ 49    " 'When a party moving for summary judgment files supporting affidavits containing well-pleaded facts, and the party opposing the motion files no counteraffidavits, the material facts set forth in the movant's affidavits stand as admitted. [Citation.] The opposing party may not stand on his or her pleadings in order to create a genuine issue of material fact. [Citation.]' " *E.O.R. Energy, LLC v. Pollution Control Board*, 2015 IL App (4th) 130443, ¶ 97, 29 N.E.3d 691 (quoting *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 49, 2 N.E.3d 1052). We reiterate that because an affidavit submitted in a summary judgment proceeding serves as a substitute for trial testimony, strict compliance with Rule 191(a) is necessary to ensure that trial courts are presented with valid evidentiary facts upon which to base a decision. *Lucasey v. Plattner*, 2015 IL App (4th) 140512, ¶ 19, 28 N.E.3d 1046.

¶ 50    With the exception of Aupperle's report, which IEPC included only to attack, we conclude that IEPC fully complied with Rule 191(a) by filing supporting affidavits from its two experts, which contained well-pleaded facts regarding the just compensation IEPC was required to pay landowners in exchange for its property interests as well as sworn or certified copies of all documents upon which Batis and Park relied.

¶ 51    We conclude further that landowners' response, which they later supplemented, failed entirely to comply with the requirements of Rule 191(a). Indeed, even Aupperle's report, which landowners (1) disclosed pursuant to Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2007) and (2) argued was admissible in their response to IEPC's motion for summary judgment, was not properly before the trial court at the March 2015 hearing on IEPC's summary judgment motion. As we noted in *Essig*, 2015 IL App (4th) 140546, ¶ 51, 33 N.E.3d 288, "the contents of Rule 213(f) disclosures are not *evidence* for purposes of summary judgment because Rule 213(f)

disclosures are not pleadings, depositions, admissions, or affidavits." (Emphasis in original.) "Notably, Rule 213(f) requires the *party*—not the expert himself—to disclose the substance of the expert's anticipated testimony." (Emphasis in original.) *Id.* ¶ 52.

¶ 52 Accordingly, we reject landowners' claim of error and affirm the trial court's grant of summary judgment in IEPC's favor. In so concluding, we note that the instant case continues the unfortunate trend of imprecision associated with summary judgment motions and responses thereto.

¶ 53 In *Essig*, the plaintiffs sued the defendant medical center claiming institutional negligence. *Id.* ¶ 19. In compliance with section 2-622(a)(1) of the Code of Civil Procedure (735 ILCS 5/2-622(a)(1) (West 2008)), the plaintiffs attached to their complaint a physician's written report attesting to the merits of their claim. *Essig*, 2015 IL App (4th) 140546, ¶ 20, 33 N.E.3d 288. After the defendant moved for summary judgment, the plaintiffs attached the physician's section 2-622 report to their response and, thereafter, relied heavily upon that report in opposing the defendant's motion for summary judgment. *Id.* ¶ 41.

¶ 54 On appeal from the trial court's grant of summary judgment in the defendant's favor, the plaintiffs based their arguments to this court on (1) an unsworn and unsigned 22-page document and (2) purported conclusions and opinions contained in the plaintiffs' discovery disclosures filed pursuant to Rule 213(f)(3). *Id.* ¶¶ 50-51. This court noted that throughout the proceedings in the trial court and on appeal, the defendant "ha[d] at no point *** objected—or even drawn the court's attention to—[the] plaintiffs' improper reliance upon [the] section 2-622 report, the Rule 213(f) disclosures, or any other inadmissible evidence for purposes of the summary judgment determination." *Id.* ¶ 53.

¶ 55 To prevent the aforementioned evidentiary situation from reoccurring, we

provided the following guidance:

> "[T]he trial court *** would have been better served had the attorneys on both sides appropriately addressed and resolved the glaring evidentiary deficiencies present during summary judgment proceedings. *** In response to plaintiffs' reliance upon improper evidence, [the defendant] should have moved to strike the improper evidence for purposes of summary judgment. Had [the defendant] done so, the record on appeal would have reflected (much to this court's benefit) which specific pieces of evidence the court either relied upon or chose to disregard for purposes of its summary judgment ruling." *Id.* ¶ 86.

Our guidance in *Essig*, however, was not the first time we addressed this evidentiary deficiency in summary judgment proceedings.

¶ 56    In *Evans*, which was decided five years prior to our decision in *Essig*, this court explained the proper procedure to be used when a party seeks to bar the trial court from considering certain evidence for purposes of summary judgment, as follows:

> "[T]he better practice would be for the matter to be litigated in a separate, formal hearing prior to the summary-judgment hearing itself. Alternatively, if the court believes the evidentiary matter at issue is not complicated, then the court in its discretion may address that matter immediately prior to the summary-judgment hearing or during that hearing itself, provided, of course, that the opposing party has received sufficient notice of the motion. Further, the moving party should seek—and the trial court should provide—a definitive ruling on the evidentiary matter at issue. Following this procedure would not only make for a better record at the trial level, it would also provide courts of review with a clear picture of

- 22 -

(1) the parties' positions at trial and (2) the trial court's ruling.

If the evidentiary matter at issue is more involved, then the party seeking to bar the trial court's consideration of the evidence should make a motion to strike or bar the evidence and set the matter for a hearing prior to the hearing on the motion for summary judgment. This would be the preferred course, for instance, if a party wished to challenge expert testimony proffered by the other side in a summary-judgment context." *Evans*, 399 Ill. App. 3d at 251-52, 925 N.E.2d at 1277.

¶ 57 In this case, IEPC characterized Aupperle's report as "nothing short of an outrageous set of unqualified, baseless, purely speculative, and highly prejudicial statements that fail to meet any standard for admissibility under Illinois law." Thus, IEPC should have moved to strike or bar Aupperle's report prior to filing its motion for summary judgment for the reasons we have already explained. However, IEPC's decision to append the Aupperle report to its motion for summary judgment and then argue that it was not admissible was arguably worse than the situation that occurred in *Essig* because IEPC unnecessarily complicated what should have been a straightforward summary judgment analysis, given landowners' complete failure to comply with the mandatory provisions of Rule 191(a).

¶ 58 We note that based on the above-quoted exchange that occurred between IEPC's counsel and the trial court at the March 2015 hearing on IEPC's summary judgment motion, the court seemed to momentarily shift its focus away from determining whether the pleadings, depositions, admissions, and affidavits on file showed that there was no genuine issue of material fact and, instead, weighed the merits of the Aupperle report, which is not the proper focus of a summary judgment proceeding. See *Kleiss v. Bozdech*, 349 Ill. App. 3d 336, 351, 811 N.E.2d

330, 341 (2004) (in which this court reversed the trial court's grant of summary judgment because the court impermissibly weighed the evidence proffered by the parties' respective experts instead of determining solely whether a genuine issue of material fact existed).

¶ 59        However, we need not concern ourselves with whether the trial court improperly weighed the Aupperle report because we may affirm a grant of summary judgment on any basis appearing in the record, regardless of whether the court relied upon that ground. *Bartonville*, 2017 IL 120643, ¶ 34. We adhere to our conclusion that the trial court properly granted summary judgment by finding that because IEPC properly complied with Rule 191(a) and landowners did not, no genuine issue of material fact existed with regard to the just compensation IEPC owed to landowners for its right-of-way and easement interests in their respective parcels.

¶ 60                                III. CONCLUSION

¶ 61        For the foregoing reasons, we affirm the trial court's judgment.

¶ 62        Affirmed.