2024 IL App (2d) 230293-U
No. 2-23-0293
Order filed December 5, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| VINCENT SIEMER and JANE DINSDALE SIEMER, | ) ) | Appeal from the Circuit Court of McHenry County. |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 19-LA-316 |
| | ) | |
| PATRICIA ANN REETZ and STEVEN REETZ, | ) ) | Honorable |
| | ) | Joel D. Berg, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Justices McLaren and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in (1) denying plaintiffs leave to file a third amended complaint; (2) granting defendants partial summary judgment; (3) granting defendants' motions *in limine*; (4) granting defendants' motion for a directed finding; and (5) denying plaintiffs' motion for substitution of judge.

¶ 2    Plaintiffs, Vincent Siemer and Jane Dinsdale Siemer, purchased a home from defendants, Patricia Ann Reetz and Steven Reetz. A year later, they filed suit alleging misrepresentation and breach of contract arising out of three issues: (1) the septic system, (2) flooding, and (3) structural settlement. The trial court granted in part defendants' motion for summary judgment, and the

remaining matters proceeded to a bench trial after which the trial court granted defendants' motion for a directed finding and entered judgment in favor of defendants. On appeal, plaintiffs allege that the trial court erred in: (1) denying them leave to file a third amended complaint; (2) granting partial summary judgment in defendants' favor; (3) granting defendants motions *in limine*; (4) granting defendants' motion for a directed finding; and (5) denying plaintiffs' motion for substitution of judge. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Plaintiffs purchased a home on Pistakee Lake in McHenry County, Illinois from defendants on August 25, 2018. The property was purchased "as is," and no inspection of the home was undertaken by plaintiffs. In conjunction with the sales listing, defendants prepared a residential real property disclosure (Disclosure) pursuant to section 35 of the Residential Real Property Disclosure Act (765 ILCS 77/35 (West 2018)). On the Disclosure, defendants indicated by checking a box "yes" that they were "aware of flooding or recurring leakage problems in the crawl space or basement" and that they were "aware that the property is located in a flood plain." Defendants checked a box "no," indicating that they were not "aware of material defects in the basement or foundation" of the property. In the additional space provided below the list of disclosures, defendants wrote:

> "Property on 100 year flood plane [*sic*]. Had floor checked when we bought 18 years ago, original floor in place and no water damage of any sort. [W]ent up an additional 4 inches during renovation -Worst flood in history considered to be the 100 year flood in 2017- No lasting water damage on [l]and/property- no repairs required or done and no water within 4 feet of the bottom of the house."

¶ 5      Plaintiffs, represented by counsel, filed a complaint on October 4, 2019, and then, after

motion practice, filed subsequent amended complaints. The second amended complaint was filed on January 27, 2021, and alleged claims of common law fraud by misrepresentation, as well as breach of contract, related to the (1) septic system, (2) flooding, and (3) structural settlement of the foundation. Regarding the septic system, plaintiffs alleged that the subject property was a 3-bedroom, 2-bath single family home with no perimeter foundation and supported by piers and floor beams. They alleged that defendants had undertaken extensive remodeling of the house during their 18 years of ownership of the property and had also done some work on the surrounding lot. It is alleged that defendants knew that there was no functioning septic system serving the home but falsely represented in the Disclosure that there were no "material defects in the septic, sanitary sewer, or other disposal system." It is further alleged that defendants were informed of septic issues when a tenant brought portable waste disposal equipment onto the property.

¶ 6    As for the issue of flooding, plaintiffs noted that defendants stated in the Disclosure that when the property had flooded, there was "no water within 4 feet of the bottom of the house," when, in fact, "[w]indswept floodwaters and mud reached the house and would have done lasting damage if the flood level had persisted longer or if the flood level had been 6 inches higher." Finally, regarding the structural settlement, plaintiffs alleged that the Disclosure falsely represented that there were no material defects in the basement or foundation, but that the home suffered "settling and upheaval" such that, in one bedroom, an exterior bedroom wall was bowed and the floor was cracked and buckled. It was alleged a queen-sized mattress and box spring hid these defects in the "staging and published" photos of the property. Further, plaintiffs alleged that they relied to their detriment on these false statements and were damaged. The breach of contract count contended that the misrepresentations as to these issues breached a duty to disclose in the sales agreement.

¶ 7     On April 6, 2021, defendants filed a motion to dismiss the second amended complaint pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2020)), which was later converted—upon motion—to a motion for summary judgment. While the motion was pending, some discovery was undertaken by the parties, numerous court hearings occurred, and plaintiffs' attorney withdrew. The plaintiffs then began representing themselves *pro se*. By order of the court, discovery was closed on January 14, 2022, although some discovery was undertaken and discovery issues continued to be heard by the court after that date.

¶ 8     On November 17, 2022, the trial court held a hearing on defendants' motion for summary judgment and granted the motion in part and denied it in part.  It denied the motion with respect to plaintiffs' claims of fraudulent misrepresentation regarding the septic system and flooding. But it granted judgment to defendants as to the claim of fraudulent misrepresentation regarding structural settlement. Regarding the structural settlement count, defendants argued that plaintiffs had not established that any settlement of the house had been fraudulently concealed. Defense counsel stated that the "house is a hundred years old. There was no statement that it was perfect and pristine. It was sold as-is, as a matter of fact." Further, counsel asserted that there was "no allegation of any overt representation by [defendants] about anything inside the house." Further, the mattress was not so difficult to move as to block any attempts to check the foundation. Plaintiffs argued that during depositions, defendants admitted that there was a defect in the foundation, but that it was not a significant defect. The trial court likewise entered summary judgment in favor of the defense as to that part of the claim for breach of contract to the extent that the breach of contract was based upon the issue of structural settlement.

¶ 9     Following the hearing on the motion for summary judgment, the parties addressed the status of discovery and pleadings. The trial court noted that plaintiffs had filed a third amended

complaint, without leave of court, and later struck the third amended complaint because it was filed without leave but explained that plaintiffs could ask for leave to file an amended complaint.

¶ 10　　Shortly after the entry of the order ruling on the summary judgment motion, plaintiffs filed a series of motions: a motion for leave to file their third amended complaint; a motion to reconsider the order granting partial summary judgment; another motion to reconsider an order denying a previous motion by plaintiffs to compel defendants to produce the real estate listing; and a motion for sanctions against defense counsel on the basis that she intended to "thwart production of a relevant document," that being the aforementioned real estate listing.

¶ 11　　Plaintiffs' pending motions were set for hearing on January 24, 2023. However, plaintiffs failed to appear on that date. In plaintiffs' absence, the trial court heard defendants' argument on plaintiffs' motion for leave to file a third amended complaint. Defendants contended that filing a third amended complaint would be improper, as the new complaint would be "the fourth attempt of [these] plaintiff[s] to set forth what really happened, even though [they] swore to what happened the first, second and third time." Further, plaintiffs were attempting to file this third amended complaint after the close of discovery and after summary judgment had been granted in part. Finally, defense counsel argued that plaintiffs third amended complaint "counteracts the previous verified complaints, and it is not appropriately verified." The trial court indicated that "it is because of that reason that their motion for leave to file the third amended complaint is heard, and most respectfully, denied." The trial court also denied plaintiffs' motion for sanctions.

¶ 12　　On January 25, 2023, plaintiffs filed a "motion for reconsideration of leave to file [third] amended complaint." In this motion, plaintiffs stated that they were unable to attend the January 24, 2023, hearing because they were experiencing technical difficulties, and the trial court should again hear the motion on its merits. Plaintiffs also filed "submissions" in support of their motion

to reconsider, arguing that the trial court based its ruling on the motion for summary judgment "upon oral representations of opposing counsel at the hearing," and not evidence. They further argued that defense counsel intended to "ambush" them at the hearing by not filing a written response to the motion. Plaintiffs also took issue with "unverified," "late" discovery. Finally, plaintiffs contended that it was improper for the trial court to conduct the hearing on the motion to reconsider because they were not present for the hearing.

¶ 13     On March 3, 2023, at the hearing on plaintiffs' motion to reconsider, plaintiffs argued that the trial court erred in partially granting defendants' motion for summary judgment because the court based its findings on the reasoning that the home was "older" and sold "as-is." The trial court responded that this characterization was incorrect, as its decision was based upon the fact that plaintiffs' only evidence of settlement was that a mattress was placed on a floor in the home, but there was no evidence that this placement was intended to prevent plaintiffs from being able to inspect the premises or inspect the appearance of the floor. The trial court denied plaintiffs' motion to reconsider, explaining to plaintiffs its belief that "[a]s-is isn't a bar to fraud, but [the] only claim of fraud was based upon the placement of the mattress and nothing else beyond *** speculation as to what that must have meant." Following a discussion, the trial court also ordered that defense counsel contact defendants' real estate attorney to locate the real estate listing and that the document be tendered to plaintiffs. Five days later, plaintiffs filed a "motion for reconsideration of partial summary judgment and refusal to reconsider."

¶ 14     On March 23, 2023, the trial court held a hearing on an unrelated motion to reconsider, that is, plaintiffs' motion to reconsider the denial of leave to file their third amended complaint. Prior to that hearing, the trial court ordered that the motion to reconsider the March 3, 2023, ruling (denying the motion to reconsider the partial grant of summary judgment) be stricken on the court's

motion, telling plaintiffs that "[y]ou cannot file a motion to reconsider a motion to reconsider or a case would never, ever, ever, ever, ever, ever, ever, ever, ever end. You would be filing motions to reconsider *ad nauseam*."

¶ 15 The trial court then denied plaintiffs' motion for leave to file a third amended complaint. In addressing its concerns about the third amended complaint, the trial court noted that it was treating this as a hearing on the original motion, not as a motion to reconsider the January 24, 2023, hearing. The trial court addressed inconsistencies between the second and third amended complaints, noting that several of the new counts had been previously dismissed, in whole or in part. Specifically, it observed that the consumer fraud and negligent misrepresentation counts were new and "most certainly" should not be in the complaint.

¶ 16 Following the hearing, plaintiffs filed a "motion for judicial recusal of Judge Berg under Canon 2, Rule 2.11 of the Code of Judicial Conduct or Motion for Leave Seeking Recusal in the Alternative." See Illinois Code of Judicial Conduct, Canon 2 (eff. Jan. 1, 2023). In their motion, plaintiffs copied and pasted numerous subsections of the Code of Judicial Conduct. Further, plaintiffs opined that the trial court had predetermined issues in this matter and had ignored the relevant law.

¶ 17 On April 13, 2023, the presiding judge of the division ("presiding judge") held a hearing on plaintiffs' "motion for judicial recusal." In sum, plaintiffs claimed bias and cited the "Bangalore Principles that talk about United Nations Resolution 2006/23, Paragraph 81, Reasonable apprehension of bias." Further, as evidence of bias, plaintiffs opined that the trial court ruled that they could not file a motion to reconsider a motion to reconsider, which plaintiffs believed to be incorrect. This was compounded by the fact that the trial court then struck their motion as improperly filed without leave.

¶ 18    The presiding judge denied plaintiffs' motion, explaining that "judges, of course, are presumed impartial, and the burden of overcoming the presumption of showing prejudicial trial conduct or personal bias rests on the party making the charge." Further, it noted that "[o]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings do not constitute the basis for a bias or impartiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible," nor do "judicial remarks made during the course of trial that are critical or disapproving or even hostile to counsel." Based on this presumption of impartiality, the presiding judge ruled that the conduct complained of did not rise to a level of prejudice that would require substitution of the judge overseeing the instant case and denied the motion.

¶ 19    On June 15, 2023, defendants filed their motion *in limine,* which sought to bar three classes of evidence: all of the fifteen newly named witnesses on a witness list recently tendered by plaintiffs; any expert witnesses, because no expert disclosures were made in plaintiffs' previous interrogatory answers; and documentary evidence not tendered before the discovery closure. Plaintiffs filed their opposition to the motion *in limine* as well as several other motions, which were all heard before the trial court on July 20, 2023. After hearing argument, the trial court granted the motion *in limine* as it related to newly disclosed witnesses. It then considered the request exclude expert testimony that was not properly disclosed. The trial court asked whether either party disclosed a witness pursuant to Rule 213(f)(2) (Ill. S. Ct. Rule 213(f)(2) eff. Jan. 1, 2018) or Rule 213(f)(3) (Ill. S. Ct. Rule 213(f)(3) eff. Jan. 1, 2018). Plaintiffs contended that their expert witnesses were disclosed on the recently tendered consolidated list. After hearing further argument, the trial court barred expert testimony as well as previously undisclosed documentary evidence. After further discussion on plaintiffs' disclosures, the trial court urged plaintiffs "to

speak with an attorney [] regarding the 213 disclosures and get his or her opinion on that witness list that you just handed to me with all of that because [] I anticipate that being a huge problem at trial." The trial court further explained to plaintiffs how a proper expert witness disclosure might be presented, telling plaintiffs that they should include the *curriculum vitae* and what the expert would testify to, again advising plaintiffs to speak to an attorney because their disclosures were "really, really, really big deals, huge deals."

¶ 20    After the hearing on the motion *in limine*, plaintiffs filed a "motion for reasons, rulings on objections, to reconsider and/or for leave to supplement discovery." In this motion, plaintiffs opined that the trial court had "predetermined" its rulings on certain motions and asked that the trial court "reconsider" its rulings on the motions *in limine*, seeking to "augment this discovery by way of an amended consolidated witness list." Plaintiffs further argued that "discovery rules cannot be used as a blunt tool to decimate [their] case and access to justice." A hearing on the motion was held on July 31, 2023, where plaintiffs summarized their motion, stating that defense counsel worded her motions *in limine* "effectively to prevent a trial because *** she's asking for no witnesses, no documents to be allowed." Plaintiffs argued that they had properly disclosed all discovery and witnesses with their consolidated list, to which the trial court reminded them, it had "seen that consolidated list" and that it did "not comply with Rule 213 in any way, shape, or form." The trial court denied plaintiffs' motion.

¶ 21    On August 2, 2023, plaintiffs filed a "motion for order that defense produce defendants for cross-examination on their evidence" at the trial set for August 14, 2023. Plaintiffs contended that defendants had filed affidavits in the case, "thereby committing themselves as fact witnesses." The motion was denied.

¶ 22    Trial was held on August 14, 2023, on the remaining counts, which were Count I (fraud–

septic), Count II (fraud–flooding), and Count IV (breach of contract–to the extent based upon alleged failure to disclose alleged septic and flooding). Plaintiffs first called Vincent Siemer to testify on his own behalf. He testified as follows. When plaintiffs purchased the home, defendants filled out a real estate contract and the Disclosure. Defendants answered "no" in the portion of the Disclosure that asked whether they were aware of material defects in the basement or foundation of the home. After moving into the home, Vincent noticed issues with the septic system backing up. This issue began in May 2019 and prompted Vincent to call Steven Reetz. Steven provided a diagram of where the septic system was located. During their conversation, Steven told Vincent that he had never experienced an issue with the septic system. Vincent later observed sewage pouring into the yard.

¶ 23    Regarding the issue of flooding, Vincent testified that defendants had disclosed that "the worst flood in history [was] considered to be the hundred-year flood in 2017," but that there was "no lasting water damage on [the] land/property." Vincent stated that this was "a grossly inaccurate representation of fact" because "the garage had sunk after the 2017 flood." He further testified that after he purchased the home, he noticed mud marks on the vertical pylons. The mud marks were within six inches of the structural beams, indicating to him that the flood waters had risen that high. Vincent stated that the home had a basement and fully enclosed crawl space. He testified that plaintiffs "would not have paid as much as [they] actually did for the property had the defendants not contractually misrepresented the flood risk." Vincent began to discuss the real estate listing which had become contested during discovery, at which point the trial court interrupted him to remind him that the parties were before the trial court "for bench trial," and that "[t]here [were] two counts remaining before the court, fraudulent misrepresentation regarding the septic and fraudulent misrepresentation regarding flooding." It reminded Vincent that he needed to prove the

elements related to those causes of action.

¶ 24    Vincent then attempted to testify that the flood level in 2017 had been three and a half feet higher than defendants disclosed. He also attempted to introduce into evidence an expert witness's professional appraisal, stating his belief that Rule 213(f)(1) discovery closing did not prohibit expert witness evidence. When the trial court told Vincent that he was "ignoring every single ruling" the court made, Vincent responded "[t]hat's prejudicial. I'm sorry. That's disrespectful."

¶ 25    Returning to the issue of the septic system, Vincent testified that he began to smell sewage emanating from the side of the house in a large area of the yard, so plaintiffs employed a septic company to pump the septic tank. After prodding in the yard, an employee of the septic company found a patio block three inches under the soil. Under the block there was a hole with branches thrown over it. From the hole, there was a plastic pipe that ran to an old cistern made of brick. When plaintiffs attempted to flush the toilet, sewage flushed directly into the ground. Vincent then telephoned Patricia Reetz, who told him that three weeks before plaintiffs had taken possession of the house, defendants invited 30 people over for Labor Day and defendants did not have any problems with the septic system. Vincent testified about an email he had received from Patricia after closing where she stated that

> "we know that the tank is concrete and pipes are cast iron. We do not know the age, but we were told by the neighbors as well as the owners we bought from that his father went overboard on what was necessary in code at the time. The neighbors indicated that he may have been in the industry. From our research, concrete tanks seem to be strongest with least deterioration."

However, Vincent discovered that there was no tank on the property, concrete or otherwise.

¶ 26    At this point, the trial court briefly interrupted Vincent's testimony to ask whether plaintiffs

had ordered a well and septic inspection of the property. Vincent stated that they had not, as "[i]t wasn't a requirement" and plaintiffs "relied on the sellers' disclosure." Vincent also confirmed for the trial court that plaintiffs had "every right to get a well and septic exam." The trial court further told plaintiffs that "a real property disclosure is where they have to report to you any issues that are known to them. It is not an affirmative obligation to go out and validate and verify," and that it was "waiting" for testimony about the misrepresentations made, specifically that it needed "to hear a material misrepresentation of fact, *** reliance on the material misrepresentation of fact, and *** damages as a result of the misrepresentation of fact, okay?"

¶ 27    Vincent continued that he paid an invoice to a septic company for $190. The sewage problem, in his opinion, required immediate attention, which became difficult because many septic companies refuse to service septic systems located on floodplains. Vincent found a contractor in the spring of 2020. He attempted to testify as to what his contractor would testify to, arguing that he should have been able to call the contractor as an expert witness because defendants were "notified" that plaintiffs wanted to call the contractor as a witness. The trial court reminded the plaintiffs of its ruling barring expert testimony and refused the evidence. Vincent then testified on cross-examination as follows. In October of 2018, he had at least 10 truckloads of dirt brought onto the property. Plaintiffs lived in the home for three or four weeks in the fall of 2019. In the fall of 2018, plaintiffs had friends stay at the property. Regarding the design of the home, Vincent stated that there were pylons visible from outside the home. From the crawl space, the pylons appeared to be three feet high. From the basement, the pylons appeared to be seven feet high.

¶ 28    Daniel Thorsen, a retired operating engineer, was next called to testify. He visited the property and did not locate a septic system. He stated that Vincent had dug up a pipe to find out what the problem was, but the pipe either went nowhere or to a "little tiny cistern right about three

foot in diameter and about three-foot deep." This was located on the west side of the house. Thorsen and Vincent dug up "this septic line coming out of the house." It went to the cistern and was "all bowed and all caved in." They dug out the old cistern and installed a new 1000-gallon holding tank and backfilled it. When asked if he witnessed anything unsafe or unhealthy, Thorsen responded, "[s]ewage that's coming on top of the ground, that's unhealthy." He further stated that the sewage in the ground appeared to be "seeping up." When asked if there was "anything that indicated that system was rigged to cover up the fact that it wasn't a septic," he responded, "No, there was nothing indicated other than the sewage coming up through the ground." After investigating it, he found out the whole cistern had collapsed. The cistern was brick with a stone top. On cross-examination, Thorsen testified that the tank was full of bricks and material that had collapsed.

¶ 29    Jane Siemer testified as follows. After closing on the home, plaintiffs stayed at the property for about three weeks. Two friends joined them for a portion of that time. She stated that they began noticing septic issues because the toilets were not flushing and were "backing up a bit." She recalled a septic company coming to the property and sticking a pole into the ground, looking for the septic. The employee for the septic company began hitting tiles and dug one up. Jane further testified that she remembered flushing the toilet and seeing water come out of the main sewer line. She noticed toilet paper exit the pipe too.

¶ 30    After Jane's testimony, plaintiffs rested. Defendants moved for a directed finding pursuant to section 2-1110 of the Code (735 ILCS 5/2-1110 (West 2022)). Defendants contended that plaintiffs had not advanced sufficient evidence to meet all the *prima facie* elements of fraudulent misrepresentation for either septic system or the flooding. Specifically, they argued that the court had not "heard a word *** about any statements prior to closing other than the admission that there

was no well and septic or any other kind of inspection done here." They further argued there was "no evidence of damages that were caused by anything [defendants had] done," and that a directed finding was appropriate.

¶ 31 Plaintiffs responded that "it's not a case of as-is. It's a case of disclosure, which is a contractual obligation, and it's founded in the law." They further opined that "there is no tank and no septic field. That was never contested, yet the house was sold with a septic tank and septic field." The trial court asked plaintiffs what evidence there was regarding the condition of the septic, and plaintiffs responded that it was in the email Vincent testified about. The trial court clarified that this email was sent after closing on the home. Vincent indicated that there was also evidence of a phone call with Steven prior to closing, but Vincent admitted that that information was provided in his affidavit. He did not testify to it.

¶ 32 The trial court asked plaintiffs what evidence there was of flooding. Plaintiffs responded that the evidence was in the depositions, which were not in evidence. They also argued that Vincent testified that there were water marks and mud marks on the pylons that were six inches beneath the horizontal beams. Further, plaintiffs opined that "with that and the damages of having all these companies search unsuccessfully for a septic system, putting the tank in, getting the engineering done, so the misrepresentations, in my submission, are quite clear there."

¶ 33 The trial court granted the motion for directed finding. In so ruling, it explained to plaintiffs that it did not find any evidence that the property flooded, stating "I have mud marks. That is it." Further, plaintiffs presented no evidence that defendants made a false statement regarding flooding. It continued, that the "only evidence I have at this time is a dispute between was the water four feet away or six inches away, but four feet or six inches is still away and it is not flooding. *** I cannot even draw an inference from the evidence that has been presented." Based

on the limited evidence presented by plaintiffs, the trial court stated "I have no evidence that a false statement was made. I have no evidence that it was made with the knowledge that it was false. I have no evidence it was intended to induce." Thus, the motion for directed finding on the count of fraudulent misrepresentation regarding flooding was allowed.

¶ 34    Regarding the septic issue, the trial court found that plaintiffs' "entire case on the septic system at this time hinges on two things. It hinges, first, on the real property disclosure." The trial court believed that plaintiffs "urged upon [the trial court] that that is essentially to be treated as a breach of contract." However, it stated that the issue was not a breach of contract, as the Disclosure "is not a warranty sheet," but a form where defendants checked boxes "based upon their best knowledge." The trial court then proceeded to read the evidence presented about defendants' knowledge of the septic system and found it to be "very clear right out of the gate that they don't have a clue what kind of septic they [had]. *** They [were] literally reporting what they were told 20 years ago, and they [made] it clear that is what they are doing." After reading the email evidence further, the trial court found that it had no evidence that any of defendants' statements were made with knowledge that the information was false. It had "no evidence that they knew any of that was a lie. None." Because plaintiffs failed to demonstrate that defendants had any awareness that they were making false representations regarding the septic, the motion for directed finding on the septic issue was heard and allowed.

¶ 35    Finally, regarding the breach of contract count, plaintiffs argued that defendants breached the contract because "the sellers' disclosure was used as an inducement and [plaintiffs] reasonably relied upon it." But the trial court granted the motion for directed finding as to the breach of contract count, stating that the merger doctrine "says that the contract merges into the deed upon closing and delivery of the deed." Final judgment was entered in favor of defendants and this

timely appeal followed.

¶ 36                                    II. ANALYSIS

¶ 37                    A. Plaintiffs' Third Amended Complaint

¶ 38     Plaintiffs first argue that the trial court erred in denying their motion for leave to file a third amended complaint. In support of their motion, plaintiffs rely on the factors set forth in *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 272-77 (1992).

¶ 39     We review the trial court's ruling on a plaintiff's motion to amend a complaint for an abuse of discretion. *United Conveyor Corporation v. Allstate Insurance Co.*, 2017 IL App (1st) 162314, ¶ 35; *Loyola Academy*, 146 Ill. 2d at 273-74. Section 5/2-1005(g) of the Code allows a party to amend pleadings upon just and reasonable terms before or after the entry of summary judgment. 735 ILCS 5/2-1005(g) (West 2022); *United Conveyor Corp.*, 2017 IL App (1st) 162314, ¶ 35. Although Illinois law adopts a liberal policy regarding the amendment of pleadings, the right is not unlimited, and there is no absolute right to amend a complaint. *United Conveyor Corp.*, 2017 IL App (1st) 162314, ¶ 35.

¶ 40     In *Loyola Academy*, 146 Ill. 2d at 273, our supreme court articulated four factors a court must consider when ruling on motions to amend before final judgment: (1) whether the proposed amendment would cure a defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified. The party seeking leave to amend bears the burden of demonstrating that all four factors favor the relief requested. *United Conveyor Corp.*, 2017 IL App (1st) 162314, ¶ 36.

¶ 41     We have considered each of the *Loyola* factors and find that the trial court did not abuse its discretion in denying plaintiffs' motion for leave to file a third amended complaint. As to factor

one, whether the proposed amendment would cure a defective pleading, we find that this factor weighs against plaintiffs. Plaintiffs argued that the third amended complaint cured their defective pleading by adding a new cause of action and addressing the causes of action which had been stricken previously by the trial court. However, plaintiffs' third amended complaint was not verified—unlike the first two complaints—and allegations in the third amended complaint were contradictory to those in the prior complaints. "A sworn statement of fact in a verified pleading remains binding on the party even after an amendment, and the party cannot subsequently contradict the factual allegation." *L.D.S., LLC v. Southern Cross Food, Ltd.*, 2011 IL App (1st) 102379, ¶ 35. Thus, the contradictions in fact between the verified complaints and plaintiffs' third amended complaint do not weigh in favor of curing a defect. Having said that, we see no material difference between the proposed and the current complaint with respect to factual allegations related to fraud predicated on structural settlement. Summary judgment had been entered in favor of the defense as to those allegations, but nothing in the third amended complaint would have required revisiting that ruling.

¶ 42     As to factor two, whether other parties would sustain prejudice or surprise, this factor again weighs against plaintiffs. Plaintiffs' third amended complaint was filed on October 17, 2022— over three years after the initial complaint and nine months after the second amended complaint. Further, it contained allegations that were contradictory to the previous complaints. Finally, it purported to allege a new cause of action, consumer fraud, which would undoubtedly have been the subject of motion practice. To file a complaint with a new count and new factual allegations contradicting those that the parties had been operating with in the three years that the case was pending would cause prejudice to defendants.

¶ 43    This point also touches upon the third factor (timeliness) as well as the fourth (whether previous opportunities to amend can be identified). On these points, we agree with the trial court that plaintiffs' proposed amendment was untimely and their delay in seeking amendment is unexplained. They moved for leave to file the third amended complaint on December 1, 2022, nine days after the summary judgment ruling and over three years after filing their original complaint. At the time plaintiffs filed their motion, discovery had been closed for nearly a year and almost two years had passed since plaintiffs filed their second amended complaint. See *United Conveyor Corp.*, 2017 IL App (1st) 162314, ¶ 37 (the plaintiff's motion for leave to amend was not timely where the plaintiff sought to amend its complaint 22 days after the trial court entered its summary judgment ruling and more than three years after it filed its complaint).

¶ 44    Plaintiffs also argue that the trial court erred by conducting an *ex parte* hearing first and later treating the motion as a "rehearing." This is disingenuous. Plaintiffs knew of the date for hearing on their motion to amend—January 24, 2023—the date they failed to appear. Thus, when the trial court initially ruled on their motion in plaintiffs' absence, it was not *ex parte*. See Black's Law Dictionary 657 (9th ed. 2009) (an *ex parte* hearing is held "without notice to" the opposing party); see also *Wells Fargo Bank, N.A. v. Simpson*, 2015 IL App (1st) 142925, ¶ 11. But more to the point, the trial judge heard the "motion to reconsider" as a hearing on the original motion to amend, because it learned that plaintiffs had been kept out of the virtual hearing due to technical issues. This worked to plaintiffs' benefit. As we have stated, the trial court's order denying plaintiffs leave to file a third amended complaint was not an abuse of discretion.

¶ 45                            B. Summary Judgment

¶ 46    Next, plaintiffs argue that the trial court erred in granting partial summary judgment as to plaintiffs' claim of common law fraud by misrepresentation based on settlement of the home, and

that part of the breach of contract claim which relied on allegations of fraud regarding the structural settlement. Specifically, plaintiffs argue that the trial court made its ruling by reasoning that the house was sold as-is. We note that while defendants have filed a brief in this court and argued about other contentions made by plaintiffs on appeal, their brief omits any discussion of this ruling. However, this omission does not require automatic reversal, and plaintiff continues to bear the burden of establishing error. See *TSP-Hope, Inc. v. Home Innovators of Illinois, LLC*, 382 Ill. App. 3d 1171, 1173 (2008).

¶ 47     "The purpose of a summary-judgment proceeding is not to try an issue of fact but, instead, to determine whether a genuine issue of material fact exists." *Evans v. Brown*, 399 Ill. App. 3d 238, 243 (2010). "Summary judgment is properly granted when the pleadings, depositions, admissions, and affidavits on file, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Enbridge Pipeline (Illinois), LLC v. Kiefer*, 2017 IL App (4th) 150342, ¶ 35. In evaluating a motion for summary judgment, we are limited to the record as it existed at the time the motion was presented to the trial court. *Monson v. City of Danville*, 2018 IL 122486, ¶ 47 (citing *McCullough v. Gallaher & Speck*, 254 Ill. App. 3d 941, 947 (1993)).

¶ 48     We review a trial court's order granting summary judgment *de novo*. *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 305 (2005). "In undertaking such review, our function is to determine whether the court reached the proper result. The reasons given by the court for its decision or the findings on which the decision is based are not material if the judgment is correct." *Id*. We may affirm a grant of summary judgment "for any reason that finds its basis in the record, regardless of whether the trial court exercised similar reasoning." *Brettman v. M & G Truck Brokerage, Inc.,* 2019 IL App (2d) 180236, ¶ 28.

¶ 49    The elements of common-law fraud are: (1) a false statement of material fact; (2) the defendant's knowledge that the statement was false; (3) the defendant's intent that the statement induce plaintiff to act; (4) the plaintiff's reliance upon the truth of the statement; and (5) the plaintiff's damages resulting from reliance on the statement. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496 (1996); *Capiccioni v. Brennan Naperville, Inc.*, 339 Ill. App. 3d 927, 933 (2003). In the context of common law fraud, the law presumes that transactions are fair and honest; fraud is not presumed. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 191–92 (2005). Accordingly, a plaintiff has the burden of proving each element of fraud by clear and convincing evidence. *Findlay v. Chicago Title Ins. Co.*, 2022 IL App (1st) 210889, ¶ 80, *as modified on denial of reh'g* (Nov. 3, 2022), *appeal denied*, 201 N.E.3d 575 (Ill. 2023).

¶ 50    The plaintiffs' complaint alleged that the Disclosure fraudulently denied that sellers were aware of any material defects in the foundation, walls, windows doors or floor, in that there was "preexisting settling and upheaval" resulting in defects in the North bedroom: a bowed wall, and damage to the floor. The complaint stated that this was concealed by the placement of a mattress and box spring "over and in front of the defect in their staging and published photographs of the property." The defendants' answer denied any material defect, any concealment, and any alleged damages.

¶ 51    Setting aside the parties' briefs on the motion for summary judgment, relevant to the summary judgment, the trial court had before it the following evidence: (1) sworn affidavits from both defendants, appended to their motion, (2) the plaintiffs' sworn affidavits, attached to their response, and (3) plaintiffs' jointly sworn interrogatory answers. While the deposition of Daniel Thorsen, a septic engineer, was properly before the court, it related only to the septic claims. That was the only sworn deposition testimony before the court.

¶ 52    The affidavit of Mrs. Reetz stated:

"The home on the Property is over 100 years old. It has character. It was never represented to be a new construction home. The age was fully disclosed. Over 100 years of wear and tear and settling, it is not surprising that some portion of the home is not perfectly square. There were no cracks that we knew of and certainly no significant cracks anywhere in the walls, floors or of the home on the Property at the time of Closing. The Complaint describes a Southeast corner of the home as being the location with the buckling in the bedroom, hidden by the bed; however, the southeast corner is a closet. At all times between August 9, 2018 and September 28, 2018, the home was available for inspection by Plaintiffs or their agents. At no time between August 9, 2018 and September 28, 2018 did we take any steps to hide, cover or mask any cracks or buckling at the Property. At no time did we place any furniture, rug or other obstruction to cover any defect."

¶ 53    The affidavit of Mr. Reetz said stated that

"when we closed on the sale of the Property, on September 28, 2018, there were not any latent defects on the floor or walls in the second bedroom (which is actually located at the NE end of the home). We were unaware of any buckling and cracking and photos reflect condition at closing."

The listing photos were attached to the affidavits, and relative to the issue of settlement as alleged in the complaint, there is a photo of the North bedroom, which appears to be a small bedroom with a low bed, made with pillows and coverlet, in the corner. The flooring, windows, and walls are unremarkable, although only partially visible due to the angle of the camera. None have discernible defects. In their memorandum supporting their motion, the defendants argue that they were entitled to summary judgment related to the settlement issue because of the absence of sufficient evidence

to establish the non-movants' case, asserting that "Plaintiffs have proffered no evidence of knowledge, false statement, intent to induce reliance, reasonable reliance, causation or damages."

¶ 54  Plaintiffs responded with their own sworn affidavits, but on the issue of the structural settlement, neither offers much information. Mrs. Siemer provides some facts about the flooding and the septic but says nothing about alleged settlement in the North bedroom. Relevant to that topic, Mr. Siemer's affidavit says only this: "The house settlement REETZs are alleged to have concealed is, as Ms Reetz indicates, in the northeast corner of the house and not the southeast corner." The plaintiffs' brief raises arguments about some of the factual assertions made by defendants but added nothing to the factual material properly before the court. Defendants replied, asserting that, with respect to the issue of structural settlement, plaintiffs had proffered no evidence of defendants' knowledge, false statements, intent to induce reliance, reasonable reliance, causation or damages.

¶ 55  Defendants further claimed the Plaintiffs had abandoned the structural settlement count, not addressing it at all. In their sur-reply brief, plaintiffs allude in conclusory and argumentative fashion to statements Mrs. Reetz purportedly made about the North bedroom at her deposition, but the deposition was not in the record before the court, therefore these arguments were not evidence properly before the court for the purposes of the summary judgment motion. See *Essig v. Advocate BroMenn Medical Center.,* 2015 IL App (4th) 140546, ¶¶ 41-43 (finding that expert's report attached as an exhibit to non-movant's brief in opposition to summary judgment motion "not properly before either the trial court or this court" for the purpose of summary judgment, because it was not sworn to, notarized, or otherwise made under oath).

¶ 56  "The purpose of a summary judgment proceeding is not to try an issue of fact but, instead, to determine whether a genuine issue of material fact exists." *Evans v. Brown,* 399 Ill. App. 3d

238, 243 (2010). Summary judgment is appropriate only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). "When a party moving for summary judgment files supporting affidavits containing well-pleaded facts, and the party opposing the motion files no counter affidavits, the material facts set forth in the movant's affidavits stand as admitted. [Citation.] The opposing party may not stand on his or her pleadings in order to create a genuine issue of material fact." *Enbridge Pipeline (Illinois), LLC v. Kiefer*, 2017 IL App (4th) 150342, ¶ 49 (Internal quotations omitted).

¶ 57    In this case, construing record strictly against the movant as we must, (see *Monson*, 2018 IL 122486, ¶ 12), there was the denial of a crack or any defects in the north bedroom by Mrs. Reetz in her affidavit, and Mr. Seimer's agreement that the "house settlement REETZs are alleged to have concealed is, as Ms Reetz indicates, in the northeast corner of the house and not the southeast corner." Even if we read this comment generously as an attempt to incorporate a conclusory allegation in the complaint that there was a defect in the room and give it "evidentiary weight for purposes of summary judgment," (*Essig*, 2015 IL App (4th) 140546, ¶ 49; see *People ex rel. Stephen B. Diamond, P.C. v. Henry Poole & Co.* 2023 IL App (1st) 220195, ¶ 36 (observing that allegations sufficient to surpass a motion to dismiss may be insufficient to surpass summary judgment)), we would be required to affirm because plaintiffs did not present any specific evidence of damages. There were no receipts, estimates, or similar material that could demonstrate their cost before the court at the hearings. "In order to survive a motion for summary judgment, a plaintiff need not prove her case, but she must present a factual basis that would arguably entitle her to a judgment." *Bruns v. City of Centralia,* 2014 IL 116998, ¶ 12. "If the plaintiff fails to establish any element of the cause of action, summary judgment for the defendant is proper." *Williams v.*

*Manchester,* 228 Ill. 2d 404, 417 (2008). *Essig*, 2015 IL App (4th) 140546, ¶ 38. In sum, plaintiffs presented no facts to support their claim regarding structural settlement issues with the home. We therefore find the trial court's grant of summary judgment on this count was properly entered.

¶ 58                                     C. Rulings on Motion *in Limine*

¶ 59    Plaintiffs next contend that the trial court erred in its rulings on defendants' motion *in limine* to bar undisclosed evidence which was heard just prior to trial. In sum, plaintiffs argue that the trial court erred in granting defendants' motions *in limine* and, as a result, limiting the evidence which plaintiffs could present at trial.

¶ 60    The case was filed on October 4, 2019. On July 27, 2021, the trial court entered a discovery order requiring Rule 213(f)(1) discovery to be completed by September 8, 2021, which was later extended until October 8, 2021, and then again extended until January 14, 2022. It should be noted that plaintiffs' attorney moved to withdraw as counsel on January 10, 2022, which was granted on March 18, 2022. Plaintiffs then filed their appearance to represent themselves *pro se* on May 3, 2022. On August 30, 2022, the court granted plaintiffs leave to take depositions of defendants, Steven Reetz and Patricia Reetz, setting a deadline of September 16, 2022, but denied plaintiffs' request to serve new interrogatories. The trial court also ordered that any and all discovery which was not completed by September 16, 2022, was "waived." In their brief in this court, plaintiffs concede discovery was cut off in 2022. In March of 2023, the case was set for bench trial on August 14, 2023.

¶ 61    On June 15, 2023, the defense filed a motion *in limine* asking the court to bar undisclosed testimony witnesses or exhibits not timely disclosed. According to defendants' motion, plaintiffs' previous and timely disclosures named three witnesses, plaintiffs themselves and Daniel Thorsen. These disclosures were made in September 2021 (Thorsen was deposed by the defense in

September 2022). But now, the defense alleged that plaintiffs had served upon them a new witness list dated March 14, 2023, plaintiffs' Rule 213 "Consolidated Witness List," naming 15 additional witnesses, four of whom were identified as experts. The motion also requested the bar of previously undisclosed documentary exhibits. The trial court granted the motion and denied a motion to reconsider. On appeal, plaintiffs argue that the trial court erred by finding that their witnesses and documentary evidence had not been previously disclosed during discovery; that, even if not formally disclosed, defendants were on notice of the witnesses to be called at trial such that any violation was harmless; and that the trial court failed to consider appropriate factors in imposing a harsh sanction.

¶ 62    The supreme court of Illinois has propounded rules of discovery allowing a party broad access to pretrial disclosure of "any matter relevant" to the cause of action. Ill. S. Ct. R. 201(b)(1) (eff. Mar. 17, 2023); see Ill. S. Ct. R. 201-224 (eff. Oct. 1, 2024). Supreme Court Rule 214 requires a party to provide requested documents, including photographs and "all retrievable information." Ill. S. Ct. R. 214 (eff. July 1, 2018). Supreme Court Rule 213 requires a party—upon request—to identify their witnesses at trial and provide information about the witness's anticipated testimony. Ill. S. Ct. R. 213(f) (eff. Jan. 1, 2018); *Heriford v. Moore*, 377 Ill. App. 3d 849, 852 (2007) ("Subparagraph (f) of that rule provides a clear condition precedent to the provision of discovery, unlike Rule 222. The duty to disclose arises '[u]pon written interrogatory.' ").

¶ 63    The amount of information required by Rule 213 concerning each witness varies by the type of witness. There are three categories. See Ill. S. Ct. R. 213(f)(1)-(3) (eff. Jan. 1, 2018); *id.* at Committee Comments ("The paragraph divides witnesses into three categories, with separate disclosure requirements for each category.").

¶ 64    The first category is lay witnesses. A lay witness is one who will testify to facts or lay opinions; for these witnesses, the disclosure need only disclose the subjects of the witness's testimony. See Ill. S. Ct. R. 213(f)(1) (eff. Jan. 1, 2018); *id*. at Committee Comments (stating that "subjects" means "the topics, rather than a summary."). The second category of witness for the purposes of Rule 213 is an independent expert witness. See Ill. S. Ct. R. 213(f)(2) (eff. Jan. 1, 2018). That is a person who will offer expert testimony, but is not the party, the party's employee, or the party's retained expert. *Id*. Rule 213(f)(2) requires disclosure of the subjects on which an independent expert will testify and the opinions the party expects to elicit. *Id*.

¶ 65    The third category of witness recognized by Rule 213 requires the most detailed disclosures. See. Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2018); *id*. at Committee Comments ("[R]ule requires the party to provide all of the details requires by the former rule."). Supreme Court Rule 213(f)(3) requires that a party calling a controlled expert witness must identify: (i) the subject matter on which the witness will testify; (ii) the conclusions and opinions of the witness and the bases therefor; (iii) the qualifications of the witness; and (iv) any reports prepared by the witness about the case. See Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2018).

¶ 66    Turning to the application and construction of the rule, the rule itself states: "This rule is to be liberally construed to do substantial justice between or among the parties." See Ill. S. Ct. R. 213(k) (eff. Jan. 1, 2018). The seminal case construing Rule 213 is *Sullivan v. Edward Hospital*, 209 Ill. 2d 100 (2004). There, the supreme court observed:

> "This rule is intended to be a shield to prevent unfair surprise but not a sword to prevent the admission of relevant evidence on the basis of technicalities. The purpose of the rule is to allow for a trial to be decided on the merits. The trial court should take this purpose into

account when a violation occurs and it is ordering appropriate relief under Rule 219(c)." *Sullivan*, 209 Ill. 2d at 109.

¶ 67 When there is an objection to evidence based upon Rule 213, the proponent of the evidence has the burden to prove that the information was provided in an answer to a Rule 213 interrogatory or in the witness's discovery deposition. See *Wilbourn v. Cavalenes*, 398 Ill. App. 3d 837, 850 (2010). As *Sullivan* signals, a finding of whether there is a Rule 213 violation is only the first step in the analysis of a Rule 213 objection. *Zickuhr v. Ericsson, Inc.*, 2011 IL App (1st) 103430, ¶ 79. If there is a violation of the rule, the discussion is not over because there is no automatic bar of the violative testimony. *Zickuhr*, 2011 IL App (1st) 103430, ¶ 80. The trial court must then determine the appropriate sanction for the Rule 213 violation. *Id.*

¶ 68 Rule 219(c) authorizes a trial court to prescribe sanctions, including barring witnesses and exhibits, when a party failed to comply with the trial court's orders regarding discovery, Ill. S. Ct. R. 219(c) (eff. July 1, 2002); *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 620 (2007). That determination is guided by consideration of six factors. These are: (1) the surprise to the adverse party; (2) the prejudicial effect of the testimony; (3) the nature of the testimony; (4) the diligence of the adverse party; (5) the timely objection to the testimony; and (6) the good faith of the party calling the witness. *Sullivan*, 209 Ill. 2d at 100. The same test is used in determining sanctions under Rule 214. *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 124 (1998). The imposition of discovery sanctions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Nedzvekas*, 374 Ill. App. 3d at 620-21.

¶ 69 Prior to considering the merits of the trial court's bar order, we must first address defendants' argument that plaintiffs failed to preserve for appeal the issue of exclusion of evidence because plaintiffs made no competent offer of proof at trial. The Illinois Rules of Evidence provide

that: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and *** [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within the questions were asked." Ill. R. Evid. 103(a)(2) (eff. Jan. 1, 2011). Section 103(b)(3) adds: "In civil trials, even if the court rules before or at trial on the record concerning the admission of evidence, a contemporaneous trial objection or offer of proof must be made to preserve a claim of error for appeal." Ill. R. Evid. 103(b)(3) (eff. Jan. 1, 2011).

¶ 70     A party claiming he or she has not been given the opportunity to prove his or her case must provide a reviewing court with an adequate offer of proof as to what the excluded evidence would have been. *In re Estate of Romanowski*, 329 Ill. App. 3d 769, 773 (2002). An adequate offer of proof apprises the circuit court of what the offered evidence is or what the expected testimony will be, by whom it will be presented, and its purpose. *Clayton v. County of Cook*, 346 Ill. App. 3d 367, 385 (2003), *modified on reh'g* (Feb. 26, 2004). The purpose of an offer of proof is to inform the trial court, opposing counsel, and a court of review of the nature and substance of the evidence sought to be introduced. *Volvo of America Corp. v. Gibson*, 83 Ill. App. 3d 487, 491 (1980). The failure to make an offer of proof results in a forfeiture of review of whether the evidence was excluded improperly.  *Clayton*, 346 Ill. App. 3d at 385.

¶ 71     In *Volvo of America Corp. v. Gibson*, 83 Ill. App. 3d 487 (1980), the lessee of a car was sued for his failure to make payments on the lease. During the lessee's examination by his own counsel, objections to questions concerning the operability and functioning of the car being leased, as well as of a similar previously leased car, were sustained. *Volvo of America Corp.*, 83 Ill. App. 3d at 490. The appellate court held that not only did the offer of proof fail to apprise the trial court of the purpose of the testimony and assess its value to the case, it also left the appellate court unable

to review the issue: "From the foregoing we are unable to find that the proposed evidence should have been received or that prejudice resulted from its exclusion." *Id*. at 492.

¶ 72    In this case, no offer of proof was made to the trial court concerning any of the excluded evidence. That would have served the purpose of allowing the trial court an opportunity to understand the nature of the evidence sought to be admitted, as well as consider the prejudice and surprise (or lack thereof) that its admission might have effected on defendants, key factors in applying the six factor *Sullivan* test. See *Sullivan*, 209 Ill. 2d at 110. More to the point, it would have also provided this court with a basis to review the bar order imposed by the trial court.

¶ 73    An appellate court will review a trial court discovery sanction using the same six *Sullivan* factors. See *Sohaey v. Van Cura*, 158 Ill. 2d 375, 380 (1994). Like the court in *Cotton v. Coccaro*, "we are left guessing as to what evidence was even excluded, and we have no way to weigh prejudice stemming from that ruling if it was, in fact, erroneous." *Cotton v. Coccaro*, 2023 IL App (1st) 220788, ¶ 15 (affirming trial court exclusion of evidence and finding forfeiture of argument on appeal where appellant failed to raise the issue at trial and made no offer of proof). We determine the issue has been forfeited.

¶ 74    Forfeiture aside, plaintiffs' Rule 213 "Consolidated Witness List," first produced on March 14, 2023, might have provided adequate disclosure, albeit untimely, for lay witnesses under Rule 213(f)(1), assuming the terminology used is accurate—an assumption which is difficult to assess absent an offer of proof. But with respect to controlled experts (at least three of the 15 newly identified witnesses were listed as "controlled experts"), the disclosures were certainly inadequate. The rule demands detailed disclosures. See Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2018); *Steele v. Provena Hospitals*, 2013 IL App (3d) 110374, ¶ 96 ("[T]he requirement that the party identify the

'subject matter' of the testimony means that the party must set forth the gist of the testimony on each topic the witness will address").

¶ 75    The supreme court rules regarding discovery represent our supreme court's best efforts to manage the complex and important process of discovery. *Sullivan*, 209 Ill. 2d at 109. An enduring goal of the discovery process is full disclosure (*Simpkins v. HSHS Medical Group, Inc.*, 2017 IL App (5th) 160478, ¶ 33), and clearly that did not happen here. The "imposition of sanctions for a violation of discovery rules has always been, and still remains, a matter largely within the sound discretion of the trial court." *Prather v. McGrady*, 261 Ill. App. 3d 880, 886 (1994). Plaintiffs have not established an abuse of discretion.

¶ 76    We note that for some barred evidence, plaintiffs argue that they provided discovery on an earlier date. The trial court found they did not. As we said, when there is a Rule 213 objection to evidence based upon an alleged discovery violation, the proponent of the evidence has the burden to prove that the information was provided. See *Wilbourn v. Cavalenes*, 398 Ill. App. 3d 837, 850 (2010) (applying Rule 213). Based on the evidence before the court at the hearing on defendants' motion, we are unable to conclude that its ruling was erroneous. We note that, in their post-trial motion, plaintiffs offered the trial court an email exchange between their previous counsel and the defense, along with a list of links to documents, as proof of timely compliance. But that email exchange does not clarify exactly what was tendered. In any event, without an offer of proof to assess the merits of the discovery ruling and its importance to plaintiffs' case, we cannot perform a proper review.

¶ 77    Plaintiffs also contend that January 14, 2022, was a "phantom date," and not the actual date close of discovery, but it is apparent from a review of the record that plaintiffs were on notice of the close of discovery, as there were numerous court orders indicating the deadline for discovery

and the trial court referenced the date numerous times. Additionally, plaintiffs were warned by the trial court that their disclosures did not comply with Rule 213(f)(2) and Rule 213(f)(3) prior to the hearing on defendants' motion. They conceded in their brief that discovery closed in 2022, therefore, clearly their March 2023 disclosures were untimely. Finally, plaintiffs claim that defense counsel misled the court and alleged that the defense was late with their own discovery, but none of these arguments are availing, nor do they suggest that honoring plaintiffs' forfeiture would work an exceptional injustice. See *Reynolds v. Village of Creve Coeur*, 2022 IL App (3d) 210260, ¶ 23.

¶ 78                                   D. Directed Findings

¶ 79     Plaintiffs next claim that the trial court erred in granting defendants' motion for directed finding at trial and in applying the merger doctrine to dispose of the breach of contract claim. At the close of the plaintiffs proofs, the trial court granted defendants' motion for directed finding and disposed of plaintiffs' three remaining counts: common law fraud by misrepresentation (septic); common law fraud by misrepresentation (flooding); and breach of contract as it related to the septic and flooding. We will address these arguments in turn.

¶ 80                    *Directed Findings at the Close of Plaintiffs' Evidence*

¶ 81     In a bench trial, section 2–1110 of the Code of Civil Procedure (735 ILCS 5/2–1110 (West 2022)) allows a defendant, at the close of the plaintiff's case, to move for a finding or judgment in his favor. Our supreme court has recently discussed the proper procedural framework for ruling on this motion. *In re Estate of Coffman*, 2023 IL 128867, ¶¶ 51-56. In a two-step inquiry, the trial court should first determine whether plaintiffs presented a *prima facie* case as a matter of law. *Id.*, ¶ 52. If so, then, second, the court should weigh all of the evidence, considering the credibility of witnesses and drawing reasonable inferences, and then decide if the totality of the evidence presented, including any evidence favorable to defendants, negates some of the evidence

underpinning the *prima facie* case. *Id.*, ¶¶ 53-54. The standard of proof to be applied to the evidence in this weighing process is the standard of proof required by the underlying cause of action. *Id.*, ¶ 54. If the trial court finds that the plaintiff has failed to present a *prima facie* case as a matter of law, the appellate standard of review is de novo. *Id.*, ¶ 52. However, if the trial court moves on to consider the weight and quality of the evidence and finds that no *prima facie* case remains, the appellate standard of review is the "manifest weight of the evidence" standard. *Id.*, ¶ 54.

¶ 82    To present a case of common law fraud by misrepresentation, plaintiffs needed to provide evidence for each of the elements: (1) a false statement of material fact; (2) the defendant's knowledge that the statement was false; (3) the defendant's intent that the statement induce the plaintiff to act; (4) the plaintiff's reliance upon the truth of the statement; and (5) the plaintiff's damages resulting from reliance on the statement. *Connick*, 174 Ill. 2d at 496; *Capiccioni*, 339 Ill. App. 3d at 933. Where fraud is alleged, plaintiff has the burden of proving each element by clear and convincing evidence. *Findlay,* 2022 IL App (1st) 210889, ¶ 80.

¶ 83    In this case, as it relates to flooding, the trial court acknowledged statements in defendants' Disclosure that the home sat in a floodplain and that the land upon which the home sits had experienced flooding. But the trial court found no evidence in the record established that the home itself flooded. "I have mud marks," and "a dispute between was the water feet away or six inches, but four feet or six inches is still away and it is not flooding." Additionally, the court noted there was "zero evidence" of any damages related to alleged flooding. We agree with this assessment of the record and find no error in the directed finding.

¶ 84    Turning to the issue of the septic system, the trial court examined all of the evidence before it. It found the Disclosure was not a warranty and not a contract to deliver a functioning septic; it

was a statement that the defendants were not aware of material defects. The court discussed the post-closing statements of the defendants' about the facts they understood about the septic system. An email, admitted during plaintiffs' case at the trial, by Mrs. Reetz to plaintiffs after the Siemers raised questions about the system, stated: "We have done a little research this week about the septic system. We know that the tank is concrete and pipes are cast iron. We do not know the age, but we were told by the neighbors as well as the owner we bought from that his father went overboard on what was necessary in code at that time. The neighbors indicated that he may have been in the industry." The court found: "It is very clear right out of the gait [*sic*] that they don't have a clue what kind of septic they have. I don't see how anybody could read this and guess otherwise. They are literally reporting what they were told 20 years ago." The court pointed out that defendants' lack of problems with the system was consistent with their use of the home as a weekend house. Further, it found the evidence consistent with plaintiffs' testimony that they used the house with four people living there and had no problems with the septic until a year after closing. The court concluded: "And what is their false statement of material fact, that we have no clue what we have." Given the trial court's careful review and assessment of the evidence, we cannot say that the directed finding was against the manifest weight of the evidence.

¶ 85                                    *The Merger Doctrine*

¶ 86    Next, plaintiffs claim that the trial court erred in its application of the merger doctrine, specifically that the court erred in placing the "onus on the [p]laintiffs to invoke an exception to the doctrine *** when no such obligation was even possible, much less existed in law." They further argue that the merger doctrine was inappropriate to apply to the case at hand.

¶ 87    "The doctrine of 'merger by deed' (also referred to as simply the 'merger doctrine' or 'merger rule') is well established in our case law." *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008).

Under this doctrine, all prior agreements between a buyer and a seller are merged in the deed upon its acceptance, and the deed supersedes the provisions of the real estate contract and becomes the only binding instrument between the parties. *Id*. Illinois courts have recognized exceptions to the merger doctrine where there was misrepresentation when the deed was delivered, mutual mistake, or the contract contained provisions that delivery of the deed did not fulfill. *Id*. at 369-70.

¶ 88    Here, plaintiffs' breach of contract was premised on counts alleging fraud by misrepresentation regarding the septic system, flooding, and settlement issues. However, the trial court determined, and we affirm, that plaintiffs failed to present clear and convincing evidence of fraud regarding those counts. Thus, plaintiffs did not demonstrate that an exception to the merger doctrine existed based on misrepresentation when the deed was delivered. Accordingly, we affirm the trial court's order granting the motion for directed finding as to breach of contract.

¶ 89                    E. Motion for Substitution of Judge

¶ 90    Finally, plaintiffs argue that the trial court erred in denying their motion for substitution of judge. Plaintiffs argue that after hearing their argument on the motion, the presiding judge "failed any legal or factual test" in denying their motion.

¶ 91    In Illinois, the substitution of a judge is governed by statute. See 725 ILCS 5/114–5 (West 2022); 735 ILCS 5/2–1001(a) (West 2022). Section 2–1001 of the Code allows a litigant a substitution of judge for cause. Under this provision of the statute, every "application" for such a substitution "shall be made by petition." 735 ILCS 5/2–1001(a)(3)(ii) (West 2022). "Although the statute does not define 'cause,' Illinois courts have held that in such circumstances, actual prejudice has been required to force removal of a judge from a case, that is, either prejudicial trial conduct or personal bias." *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 30. Judges are presumed impartial, and the burden of overcoming the presumption by showing prejudicial trial conduct or personal

bias rests on the party making the charge. *Eychaner v. Gross*, 202 Ill. 2d 228, 280 (2002). The *Eyechaner* court further stated:

> "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. (Emphases in original.)" *Id*. at 281 (quoting *Liteky v. United States*, 510 U.S. 540, 555, (1994)).

A trial court's decision on a motion for substitution for cause will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re Marriage of Peradotti*, 2018 IL App (2d) 180247, ¶ 16.

¶ 92    Here, plaintiffs argued that the trial court generally deferred to defense counsel's assertions and refused to hear or consider plaintiffs' arguments. A review of the record demonstrates that this is untrue. The trial court gave plaintiffs numerous opportunities to argue their case, as well as the benefit of re-hearing a motion when plaintiffs failed to appear for the hearing, and ordered the defendants to produce evidence that the trial court felt lacked relevance. Any deference to the statements of defense counsel certainly was not indicative of a high degree of favoritism or antagonism. Plaintiffs cite as evidence of bias the fact that the trial court told them they could not file a motion to reconsider the ruling on a motion to reconsider and struck some of the amended motions and petitions as filed without leave of court. Again, this was not evidence of opinions

derived from an extrajudicial source or from a deep-seated bias. Accordingly, we do not find the trial court's order denying plaintiffs' motion for substitution of judge to be against the manifest weight of the evidence.

¶ 93                                    III. CONCLUSION

¶ 94    For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 95    Affirmed.